UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No.  06-006 (JGP) |
| | : | |
| v. | : | |
| **OTTO A. GUTIERREZ, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum in aid of sentencing.

I.  **BACKGROUND**

During the plea proceedings, defendant agreed with the Statement of Facts submitted to the Court by the government.  In summary, the government's proffer demonstrated that defendant from November 1995 until August 2005, while employed as the Chief of the Administrative Accounting Section of the Inter-American Development Bank ("IDB"), embezzled at least $423,283.  For nearly a decade, defendant created fictitious vendors, directed the issuance of checks or wire transfer of funds to these fictitious vendors and debited accrual accounts that he knew were not routinely audited.

From the government's proffer and the information defendant furnished to the pre-sentence report writer, the Court can discern that Otto Gutierrez, Jr. is an extremely accomplished man - someone who worked his way up from a mail clerk to the Chief accountant of the IDB where he was responsible for the yearly payment of more than $100 million to various domestic and foreign vendors.  He supervised as many as 20 other individuals.  By 2005, he was

earning an annual salary of $141,252.[1]

## II. SENTENCING RECOMMENDATION

Defendant and the government agreed that the base offense level based upon the stipulated fraud loss is 21. See U.S.S.G.§ 2F1.1 (base offense level 7 increased by 14 due to loss of more than $400,000). It was also agreed that defendant was entitled to a three level reduction for acceptance of responsibility, reducing his offense level to 18. The government informed defendant, however, that it would request the Court to impose a two level adjustment to his offense level pursuant to U.S.S.G. § 2B1.1(b)(9)(C) based upon the sophisticated means employed to commit the fraud and a two level enhancement pursuant to U.S.S.G. § 3B1.3 for his abuse of a position of private trust, resulting in a offense level of 22.

The pre-sentence report agrees with the government's calculations. United States Probation Officer Monica Johnson similarly and correctly included a two level increase for sophisticated means and a two level enhancement for abuse of a position of trust.

### A. Sophisticated Means

Section 2B1.1(b)(9)(C) provides a two level increase if the offense involved sophisticated means. Whether a scheme was "sophisticated" or not is essentially a question of fact. United States v. Hunt, 25 F.3d 1092, 1096 (D.C.Cir. 1994). On review, the appellate court accepts the findings of the district judge, "unless the findings are clearly erroneous." United States v. Kim,

---

[1] IDB also paid defendant's tax liability. Therefore, $141,252 was his net, not his gross salary. In addition, defendant earned a lifetime pension. In June 2006, defendant is entitled to receive $104,000 yearly from this pension. Like his salary, this is net proceeds. The IDB will pay the taxes if any are due. To settle the civil matter with the IDB, defendant intends to withdraw $685,000 from his retirement fund. He or his wife (if he predeceases her) will still receive $52,000 annually tax free. This amount will be adjusted for inflation.

23 F.3d 513, 514 (D.C.Cir. 1994). The reviewing court gives due deference to the district court's application of the Guidelines to the facts of the case. Id.

The Guidelines define sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense" and could include conduct "such as hiding assets or transactions or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. Commentary § 2B1.1(b)(9)(C), Application Note 8(B); see also U.S.S.G. Commentary § 2T1.1, Application Note 4 (same examples with respect to tax offenses).

This list, however, is not exhaustive. Courts have readily found defendants employed sophisticated means in other instances. For example, in United States v. Wu, the Seventh Circuit affirmed the district court's finding of sophisticated means in connection with a conviction for failure to pay federal income taxes, noting that the defendants meticulously falsified their company's business records and provided incomplete and misleading information on their tax returns. 81 F.3d 72, 73-74 (7th Cir. 1996). Similarly, the Fifth Circuit, in United States v. Clements, agreed with the trial court's sophisticated means finding even where defendant's transactions did not involve the use of offshore bank accounts or fictional entities because defendant's use of multiple cashier checks and his wife's separate banks accounts made it more difficult for the IRS to detect his income tax evasion scheme. 73 F.3d 1330, 1340 (5th Cir. 1996). The case did not present, the court observed, the situation in which an individual taxpayer merely completed an income tax return with false information to avoid paying some federal taxes.

As detailed in the government proffer, defendant engaged sophisticated means to embezzle the funds by creating fictitious vendor accounts and falsifying IDB's records to make it

appear that these payments were for services rendered to the IDB. As IDB Executive Vice President Ciro de Flaco explained to the Court, defendant "adapted his fraudulent system as needed over the course of ten years as the IDB changed accounting systems and moved from using paper checks to electronic fund transfers." See Letter to Court from IDB, dated 4/17/06. When paper checks were issued, defendant directed that the payments be sent to the IDB's offices in D.C. where he took custody of the checks, endorsed and deposited those checks into his personal bank accounts. By using a name similar to his own, it appears defendant's bank did not question the deposits. When IDB's accounting system changed to electronic payments, defendant accessed the computer system and directed wire transfers from IDB's bank account into his personal bank accounts.[2] The account numbers of the recipient bank and not the account holder's name appeared on IDB's records

Defendant also engaged sophisticated means to impede the discovery of his embezzlement scheme by falsifying IDB's accounting journals to create the appearance that the payments to him represented legitimate operating expenses of the IDB by debiting accounts that he knew would not be subject to review. Finally, after his embezzlement was discovered, defendant attempted to erase proof of his fraud by deleting the fictitious vendor account from the IDB's database.[3]

---

[2] On at least one occasion, defendant accessed IDB's computer system from outside IDB's offices to direct an electronic payment into his personal bank account.

[3] The government agrees to the acceptance of responsibility reduction. However, as indicated by IDB's letter to the Court, defendant would not assist the IDB by identifying the extent of his embezzlement activities. In fact, defendant denied taking the money. He merely agreed that the funds appeared in his accounts and he spent it. As a result, IDB was forced to hire an outside firm to conduct a thorough audit of its records. Defendant's civil settlement with IDB only included reimbursement for part of these fees.

B.      Abuse of a Position of Trust

Under Section 3B1.3 of the Guidelines, a sentencing court must increase a defendant's offense level by two levels if the defendant "'abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense.'" U.S.S.G. §3B1.3. The Guidelines describe this section as applying to positions of public or private trust "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference.)" U.S.S.G. Commentary § 3B1.3, Application Note 1.

The district court should to determine whether the defendant: (1) occupied a position of trust and (2) abused that position in a manner that significantly facilitated the commission or concealment of the offense. United States v. Broumas, 69 F.3d 1178, 1181 (D.C. Cir. 1995), cert. denied, 517 U.S. 1148 (1996) (*quoting* United States v. West, 56 F.3d 216, 219 (D.C. Cir. 1995)). In order to determine whether a position is one of trust, the D.C. Circuit suggests the trial court to consider:

> [t]he extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed; defendant's duties as compared to those of other employees; defendant's level of specialized knowledge; defendant's level of authority in the position; and the level of public trust.

United States v. Shyllon, 10 F.3d 1, 5 (D.C. Cir. 1993), cert. denied, 510 U.S. 1206 (1994). Moreover, "a position of trust, if any, must be established from the perspective of the victim." Id. at 5 (*citing* United States v. Hill, 915 F.2d 502, 506 (9th Cir. 1993)).

It is clear that IDB placed defendant in a position of trust that significantly facilitated the commission of the crime. Defendant monitored the work of 20 employees and had ultimate

5

decision making authority regarding the yearly payment of $100 million in administrative expenses. In fact, defendant was the only one authorized to perform each of the steps required to direct the payment of such expenses, including creating the vendor accounts and directing payments. More importantly, he was the IDB employee who any auditor, inside or outside the IDB, would have consulted in determining which of IDB journal accounts to review. He was the control: the one IDB trusted to guard against the very type of theft defendant committed.

This lack of supervision is significant because it enabled defendant to commit the charged offense and to prevent others from detecting his criminal conduct for a ten year period. The Second Circuit, in a factually similar case, agreed that defendant embezzler had abused position of trust even though defendant could not issue checks used in scheme, but rather had to request them through employer's accounting department. United States v. Barrett, 178 F.3d 643 (2d Cir. 1999). As vice president of sales and national sales manager, the appellate court noted that defendant's position gave him access to account records and sales reports used to create false invoices for check requests and the accounting department did not question his check requests as result of his position. Id. at 646; see also United States v. Buck, 324 F.3d 786 (5th Cir. 2003) (defendant's position gave her discretion and ability to conceal her false reports where all the false certifications passed through her and "her relationship to those assisting her was employer-employee, giving her significant leverage to gain the complicity of others").

In United States v. Robinson, the D.C. Circuit affirmed Judge Sullivan's application of the abuse of trust enhancement for a defendant who had misappropriated funds from the DC school system designated to educate emotionally disturbed children. The Court explained that defendant's scheme to defraud the D.C. government

> could not have been completed but for [the defendant's] position as president and founder of the [] School.  He controlled the billing process, was subject to little supervision from [DC public schools], and was the only person with access to the [School's] account.

198 F.3d 973, 978 (D.C. Cir. 2000); <u>see</u> <u>also</u> <u>United States v. Miller</u> 99 F.3d 448, 1996 WL 590819 at 4 (D.C. Cir. 1996) (unpublished) (enhancement appropriate where defendant, by virtue of his position as managing general partner, could conceal his criminal activity by choosing which financial records to generate for the other partners to review ); <u>United States v. Anderson</u>, 349 F.3d 568 (8th Cir. 2003) (enhancement appropriate where defendant had complete discretion over client funds which enabled him to conceal fraud).

The same is true here.  But for defendant's position as Chief Accountant of the IDB, he would not have been able to embezzle more than $400,000 over a ten year period.  He was a fiduciary, entrusted by the IDB to properly disburse IDB funds to vendors who actually provided products or services to further IDB's functions.  Instead, defendant abused his fiduciary duties by diverting such funds for his own personal use.

Accordingly, defendant's offense level should be increased by two levels for use of sophisticated means and enhanced by another two levels because he abused his position of trust in order to carry out and conceal his ten year embezzlement scheme. As a result, defendant's total offense level is 22. Based upon a criminal history I, this Court should sentence defendant to a term of imprisonment between 41 and 51 months.

                                      Respectfully submitted,

                                      KENNETH L. WAINSTEIN
                                      United States Attorney

By: _____
       SUSAN B. MENZER
       Assistant United States Attorney
       D.C. Bar # 421007
       Fraud and Public Corruption Section
       555 4th Street, N.W.
       Washington, D.C. 20530
       (202) 514-6968