# ORIGINAL

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America          Docket No. CR 06-0006 JGP
                                  Washington, D.C.
    vs.                           Thursday, February 16, 2006
                                  11:18 a.m.
Otto A. Gutierrez, Jr.

        Defendant                 **FILED**

                                  JUN - 6 2008

                                  Clerk, U.S. District and
                                  Bankruptcy Courts

                Transcript of Plea
      Before the Honorable John Garrett Penn
          United States District Judge


**APPEARANCES:**

For the Government:        Susan Beth Menzer, Esq.

For the Defendant:         Chong C. Park, Esq.




Reporter:                  WILLIAM D. MC ALLISTER, CVR-CM
                           Court Reporter




Reported by Voice Writing and transcribed using SpeechCAT




Pages 1 through 48

2

P R O C E E D I N G S

1

2        (Defendant present.)

3            THE CLERK:  Criminal Action 06-0006.  United States

4   of America versus Otto A. Gutierrez, Jr.  Susan Menzer for the

5   government.  Chong Park for the defendant.

6            THE COURT:  Good morning, counsel.  Let me apologize

7   for starting late but in coming from another meeting to the

8   courthouse, apparently there was a power outage and they had

9   block off 3rd Street and C Street.  I wasn't sure they would

10  permit me in the courthouse but I finally found a way to get in

11  here so we are ready to go.

12            What do we have before us, counsel?

13            MR. PARK:  Your Honor, my name is Chong Park.  I

14  represent Mr. Otto Gutierrez.  This comes on an arraignment

15  today and Mr. Gutierrez will plead guilty today to the one

16  count of mail fraud that he is charged with.

17            THE COURT:  All right.  Does the government have any

18  representations to make before I speak with the defendant and

19  his counsel?

20            MS. MENZER:  No, Your Honor.  Actually I just want to

21  correct the record.  It's one count of wire fraud.

22            THE COURT:  It's one count of what?

23            MS. MENZER:  It's one count of wire fraud.

24            THE COURT:  Wire fraud.

25            All right.  Mr. Park, if you would step forward with

3

1  Mr. Gutierrez.

2          Mr. Gutierrez, I am advised at this time that you

3  wish to enter a plea of guilty to an information charging you

4  with one count of wire fraud.  It is set forth in the

5  information.

6          Has Mr. Gutierrez been served with a copy of the

7  information?

8          MR. PARK:  Yes, he has, Your Honor.

9          THE COURT:  And does Mr. Gutierrez waive the reading

10 of the information at this point?

11         MR. PARK:  He does your, Your Honor.

12         THE COURT:  All right.  Now, Mr. Gutierrez, before we

13 go forth, let me advise you that in this case you are charged

14 with a felony, and normally in that situation your case would

15 have been submitted to a federal grand jury in this court.

16         The grand jury is a group of citizens, 23 in number,

17 who would have evidence presented by the government to them.

18 Normally the defendant is not present.  Normally the defense

19 counsel is not present.

20         The evidence would be presented to the grand jury by

21 the government, and then if the grand jury made a determination

22 that there was probable cause to believe that an offense had

23 been committed and probable cause to believe that you committed

24 the offense, they could return an indictment against you.

25         Now, that return of an indictment is not a finding

4

1    that you're guilty of the charge.  It is only stating that

2    there is probable cause to believe that you have committed an

3    offense.  If, after having the evidence presented to it, the

4    grand jury concluded that the government had not made out its

5    case and they refuse to return an indictment against you, then

6    the case could not go forward.

7            On the other hand, if, after the evidence is

8    presented, the grand jury concluded or at least the majority of

9    them concluded that there was sufficient evidence to make the

10   determination that an offense was committed and that you

11   committed the offense, then they would return an indictment and

12   we would be where we are here today.

13           You have an absolute right to have the matter

14   submitted for consideration by a grand jury.

15           Now, in this case, as I have just indicated, it

16   doesn't come before the court on an indictment.  So it has not

17   been before the grand jury.  It comes before the court on a

18   charge which we call an information which is submitted to the

19   court over the signature of the U.S. Attorney.

20           Have you discussed those matters with your attorney?

21           THE DEFENDANT:  Yes, I have.

22           THE COURT:  And do you have any questions concerning

23   your right to have this matter submitted to a grand jury?

24           THE DEFENDANT:  Not at this time.  No, sir, I don't

25   have any questions.

5

1          THE COURT:  You don't have any questions?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  And do you wish to waive your right to

4   have this matter submitted to a grand jury?  In other words, do

5   you wish to waive your right to indictment?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  And have you discussed that fully with

8   your attorney?

9          THE DEFENDANT:  Yes, I have.

10         THE COURT:  Do we have a waiver of indictment?

11         Mr. Gutierrez, am I pronouncing your name correctly?

12         THE DEFENDANT:  Yes, you are, sir.

13         THE COURT:  I have been handed a waiver of

14  indictment.  It appears to be signed by your attorney, Mr.

15  Park.  It also appears to be signed by you.  Is that your

16  signature?

17         THE DEFENDANT:  That's correct.

18         THE COURT:  And do you have any questions concerning

19  that form?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  And when you execute this waiver, are you

22  doing that of your own free will?

23         THE DEFENDANT:  Yes, I am.

24         THE COURT:  Then let the record reflect that the

25  court has signed and approved the waiver of indictment in this

6

1    case.

2            Counsel, perhaps I've asked you already.

3            Mr. Gutierrez, do you waive the formal reading of the

4    information?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Let me advise you at this point then and

7    I know that you know some of these things but let me advise you

8    in any event that first you are being charged with a crime

9    against the United States.  You have an absolute right to a

10   trial and a trial before a jury.  Let me further advise you,

11   Mr. Gutierrez, and some of these I will explain in greater

12   detail in a few moments, that you have an absolute right to

13   counsel.

14           I know here that you have retained counsel in this

15   case.  Is that correct?

16           THE DEFENDANT:  That's correct.

17           THE COURT:  Let me further advise you that you have

18   an absolute right not to make any statement concerning the

19   charges against you and any statement you make concerning the

20   charges against you could be used against you at time of trial.

21           Do you understand that?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Mr. Gutierrez, have you had sufficient

24   time to discuss this matter with your attorney?

25           THE DEFENDANT:  Yes, I have.

7

1          THE COURT:  Do you wish to take any addition time to

2    discuss this matter with your attorney?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Then, Mr. Gutierrez, I ask you at this

5    time how do you plea?

6          THE DEFENDANT:  I plea guilty, sir.

7          THE COURT:  You want to plea guilty to the charge?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Let me give you some further information

10   concerning your plea.  Let me say to you, Mr. Gutierrez, that

11   if this case should go to trial, that is, if you did not plea

12   guilty and the case went to trial, the government would have

13   the burden of establishing your guilt to the charge beyond a

14   reasonable doubt.

15          Now, the government would seek to do this by calling

16   witnesses and by presenting other evidence to a jury or to the

17   court.  You would have a right, through your attorney, to

18   cross-exam those witnesses called by the government and you

19   would have a right, through your attorney, to object to any

20   evidence the government sought to introduce in the case.

21          Let me further advise you, Mr. Gutierrez, that you

22   would not be required to present any evidence in the case and

23   that is because a criminal defendant is presumed to be innocent

24   until such time as the government has proved guilt beyond a

25   reasonable doubt.

8

1          So even if you presented no evidence in this case and

2    the case went forward just on the evidence presented by the

3    government, a jury, after hearing that evidence, could find you

4    not guilty of the charge because the government would be

5    required, as I said before, to establish your guilt to the

6    charge beyond a reasonable doubt, to each and every element of

7    the charge beyond a reasonable doubt.

8          Do you understand that?

9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  And understanding that, do you still wish

11    to enter a plea of guilty?

12          THE DEFENDANT:  I do.

13          THE COURT:  Now, Mr. Gutierrez, I advise you that

14    you're not required to present any evidence in the case.  You

15    are not required to testify in the case but, Mr. Gutierrez, you

16    would have a right to present evidence if you wish to do so,

17    that is, if this case went to trial.

18          You could present evidence.  You could call

19    witnesses.  You could compel the witnesses attendance by way of

20    subpoena.  You could present other evidence in the case subject

21    to ruling and objections by the government.  And, of course,

22    Mr. Gutierrez, you could also take the stand and testify in

23    your own behalf.

24          Now, if you plea guilty, you are giving up those

25    rights as well.  Is it your wish to give up those rights and

9

1    still enter a plea of guilty to the charge?

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  Mr. Gutierrez, you would be giving up all

4    these rights as well if you plea guilty.  First, you would be

5    giving up your right not to make any statement concerning the

6    charges against you because if you plea guilty, if I am to

7    accept your plea, I will have to be satisfied that there is a

8    factual basis for your plea in the case.  In other words, I

9    would have to be satisfied that the evidence supports a finding

10   them guilty in your case.

11               Second, you would be giving up your right, as I say,

12   not to make any statement concerning the charges against you.

13   Third, you'd be giving up your right to compel the government

14   to bring its witnesses here before the court and before the

15   jury, to have them placed under oath, subject to cross-

16   examination by your counsel and perhaps even by the court.  You

17   would be giving up those rights as well, if you plea guilty.

18               Understanding that, do you still wish to plea guilty?

19               THE DEFENDANT:  I do, sir.

20               THE COURT:  Mr. Gutierrez, there are yet more rights

21   that you would be giving up.  You could, prior to trial, file a

22   motion to suppress any evidence that the government seeks to

23   use against you during the trial.

24               Now,  by that, Mr. Gutierrez, your counsel would file

25   a motion.  The government would file its response and we would

10

probably have a hearing on that motion.

If the court concluded that the evidence was illegally seized against you and the court suppressed that evidence, in other words, would not allow the government to use it, then, if the evidence is not there, the government could not prosecute you at that point anyway.

Or you could file a motion to dismiss the charge against you, Mr. Gutierrez, for whatever reason you and your counsel felt was appropriate.  And of course, if the court dismissed the charge against you, Mr. Gutierrez, the government could not go forward either.

Now, of course, the government would have a right, at some point, to appeal any ruling by the court which would suppress the evidence against you or dismiss the charge against you.

Mr. Gutierrez, on the other hand, let me say that even if the court, after hearing the facts in the case, ruled that the evidence was admissible against you and denied your motion to dismiss the charge, even if the court ruled against you on that, at some point you would still would have a right to take an appeal to the United States Court of Appeals and ask them to overturn this court's ruling.

Now, if you plea guilty, you give up your right to file your motion to dismiss or your motion to suppress.  Do you understand that?

11

1          THE DEFENDANT:  I do.

2          THE COURT:  And understanding that, do you still wish

3   to enter a plea of guilty?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Mr. Gutierrez, let me advise you that

6   since this is a criminal case you have an absolute right to a

7   trial by jury.  Now, this means that a jury of 12 persons who

8   would be empanelled, that they would hear the evidence in the

9   case; and based upon that evidence in the court and

10  instructions, they would decide whether you are guilty or not

11  guilty of the charges.

12          In order to find you guilty, every member of the jury

13  must agree that you are guilty of the charge.  If they come out

14  eleven say guilty and one says not guilty, it could not be a

15  finding of guilty on the charge.

16          Let me further advise you that you would have a right

17  to participate in the selection of a fair and an impartial jury

18  to hear your case.  So we would call jurors in.  Government

19  counsel would have a chance to question potential jurors.  Your

20  attorney would have a chance to question potential jurors and

21  the court would have that chance as well.  All of this in an

22  effort to select a fair and impartial jury to hear your case.

23          Now, understanding that you have a right to a trial

24  by jury, do you wish to give up that right?

25          THE DEFENDANT:  Yes, I do.

12

THE COURT:  And have you discussed that matter with your attorney?

THE DEFENDANT:  Yes, I have.

THE COURT:  Mr. Gutierrez, I have been handed a waiver of trial by jury and it appears to be signed by counsel for the government.  Again, it appears to be signed by your attorney and it appears to be signed by you.

Is that your signature, Mr. Gutierrez?

THE DEFENDANT:  Yes, it is.

THE COURT:  And did you sign that here in open court today?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you have any questions concerning your right to a trial by juror?

THE DEFENDANT:  No, sir.

THE COURT:  And when you waive that right of trial by juror, did you do that of your own free will?

THE DEFENDANT:  I did.

THE COURT:  Let the record reflect that the court has signed and approved the wavier of trial by jury.

Mr. Gutierrez, even though you gave up your right to a trial by jury, you could still make a request that the court hear the case without a jury.  Now, this simply means that the judge would hear the case, and then based upon that case and the law, the judge would determine whether you are guilty or

13

1    not guilty of the charges.

2            There would be no jury but the burden on the

3    government is the same.  The government would be required to

4    establish your guilt to the charge beyond reasonable doubt.

5    Now, if you make that request and if the government consents

6    and the court approves, the case could be tried without a jury.

7            Is it your wish to give up your right to a non-jury

8    trial?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Do you have any questions about that at

11   all?

12           THE DEFENDANT:  No, sir.

13           THE COURT:  Mr. Gutierrez, are you entering this plea

14   of your own free will?

15           THE DEFENDANT:  Yes, I am.

16           THE COURT:  Has anyone brought any type of pressure

17   against you in order to obtain your plea in this case?

18           THE DEFENDANT:  No, sir.

19           THE COURT:  Have any promises been made for your plea

20   in this case?

21           THE DEFENDANT:  No, sir.

22           THE COURT:  Mr. Gutierrez, are you familiar with a

23   letter dated December 27th, 2005 addressed to your attorney,

24   Mr. Park, by counsel for the government?  Are you familiar with

25   that letter?

14

1          THE DEFENDANT:  Yes, I am.

2          THE COURT:  And that letter consists of six pages.

3  Have you read that letter?

4          THE DEFENDANT:  Yes, sir, several times.

5          THE COURT:  And you know that that is the plea

6  agreement?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And do you have any questions about that

9  plea agreement?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Have you discussed the plea agreement

12  with your attorney?

13          THE DEFENDANT:  I have.

14          THE COURT:  And just so the record is clear, Mr.

15  Gutierrez, what is your educational background?

16          THE DEFENDANT:  I have a bachelor's in economics,

17  with a master's in international banking.

18          THE COURT:  And at this time, Mr. Gutierrez, are you

19  on any type of medication which in any way would effect your

20  ability to respond to the court's questions or to understand

21  this procedure?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  When I say "medication", I don't mean

24  necessarily illegal drugs.  I mean any type of medication.

25          THE DEFENDANT:  I have high blood pressure medicine.

15

1    That's it.

2             THE COURT:  But that does not affect your ability to

3    go forward?

4             THE DEFENDANT:  No, sir.

5             THE COURT:  All right.  Mr. Gutierrez, do you have a

6    copy of the plea agreement before you?

7             THE DEFENDANT:  Yes.

8             THE COURT:  All right.  Let me ask you a few

9    questions about the agreement.  If you turn to page 1, first

10   paragraph sets forth what the letter is and then the first

11   numbered paragraph, that is, paragraph 1, states that you agree

12   to waive indictment and to plea guilty to a one-count

13   information.  You've read that?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  And you understand that?

16            THE DEFENDANT:  Yes, I do.

17            THE COURT:  It also refers to a statement of the

18   offense and it says, "Mr. Gutierrez agrees that the attached

19   statement of the offense fairly and accurately describes Mr.

20   Gutierrez's actions and involvement in the fraud scheme."

21            Do you understand that?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  Paragraph 2 sets forth potential

24   penalties, assessments and restitution in the case.  Do you see

25   that?

16

THE DEFENDANT:  Yes, sir.

THE COURT:  And you know that it advises you that the maximum sentence that can be imposed is 20 years imprisonment and a fine of twice the pecuniary gain or loss pursuant to the United States Code, a $100 special assessment, a five-year term of supervised release.  It could include an order of restitution requiring you to pay back the money that you took and an obligation to pay any applicable interest or penalties on the fines or restitution not timely made.

Do you understand that?

THE DEFENDANT:  I do, sir.

THE COURT:  It also refers, Mr. Gutierrez, to the sentencing guidelines.  Did you see that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And have you discussed the sentencing guidelines with Mr. Park?

THE DEFENDANT:  Yes, I have.

THE COURT:  And you understand that at the time of sentencing, if I should accept your plea, that's where we would start.  That's where the court would start at the sentencing guidelines.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  But the court could go lower or higher based upon certain facts.  Do you understand?

17

THE DEFENDANT:  Yes, sir.

THE COURT:  Turning to page 2, Mr. Gutierrez, it refers at the top to a basic level of seven, specific offense characteristic of 14, and it indicates that there was a loss in this case of more than $400,000, and that 14 is computed based upon that loss of more than $400,000.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And have you discussed that with your attorney?

THE DEFENDANT:  I have.

THE COURT:  It states in the first paragraph after, it says, "Your client agrees not to seek any decreases in your client's base offense level other than those agreed to by the government in this paragraph.  Your client further agrees not to seek a downward departure for any reason from the otherwise applicable guideline range established by the sentencing guidelines."

Do you see that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand, Mr. Gutierrez, that although we think at this point roughly what the guideline figure will be, we never have the final figure until after your case is submitted to the probation office and they collect certain information and then, based upon that information, they

18

will prepare a presentence report.  You and your attorney will

have an opportunity to review that report but the guideline

range possibly could be higher than the total of 21.

Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  And you've discussed that with your

attorney?

THE DEFENDANT:  Yes, I have.

THE COURT:  And then under paragraph 4, it speaks of

financial arrangements and it indicates that you agree to pay

restitution in the amount of $423,283 to the Inter American

Development Bank.  Do you see that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And it says also that, prior to

sentencing, you will make arrangements with that bank regarding

the payment of restitution and it provides further that in

consideration of your agreement to make full restitution the

government agrees not to seek a monetary fine at the time of

sentencing?

Do you see that?

THE DEFENDANT:  Yes, sir.

THE COURT:  It also provides that prior to the time

of sentencing and, Mr. Gutierrez, normally sentencing will take

place about seventy days from now.  Do you understand?

THE DEFENDANT:  Yes, sir.

19

1          THE COURT:  It says, "Prior to the time of

2     sentencing, you also agree to deliver to the clerk's office a

3     certified check in the amount of $100."  That pays the special

4     assessment of $100.  Do you see that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And then it sets forth in paragraph 5 a

7     waiver of rights and that pretty much sets forth the rights

8     that you are waiving that I explained to you.

9          Do you have that?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Mr. Gutierrez, you should also note

12    paragraph 6 on page 3.  It indicates that the government

13    reserves its full right of allocution for purposes of

14    sentencing and post sentencing in this case.

15         In other words, if there is some disagreement as to

16    facts or they disagree with certain facts in the report or

17    facts that might be submitted by you, they have a right to

18    respond and to speak to those facts.

19         Do you understand that?

20         THE DEFENDANT:  I do, sir.

21         THE COURT:  And, of course, the government has a

22    right to inform the probation office and the court of any

23    factual inaccuracies in the presentence report.  In fact, they

24    are obligated to do so.  Do you understand?

25         THE DEFENDANT:  I do.

1       THE COURT:  In paragraph 8, the government has

2   agreed, made a promise to you, to recommend or refrain from

3   recommending to the sentencing judge a particular resolution of

4   sentencing in this case.  They do reserve the right to full

5   allocution of any post sentence litigation in order to defend

6   the sentencing judge's ultimate decision on such issues.

7       Do you see that?

8       THE DEFENDANT:  I do, sir.

9       THE COURT:  Paragraph 9 again sets forth concessions

10  made by the government.  Have you read that?

11      THE DEFENDANT:  Yes, I have.

12      THE COURT:  You've read it all?

13      THE DEFENDANT:  Yes, sir.

14      THE COURT:  And you've discussed it with your

15  attorney?

16      THE DEFENDANT:  I have.

17      THE COURT:  All right.  Paragraph 10, it says that

18  court is not bound, Mr. Gutierrez.  It indicates that the court

19  is not obligated to follow any recommendation of the government

20  at time of sentencing and that the final decision regarding

21  your bond status or detention will be made by the court at the

22  time of your plea of guilty.

23      Do you understand that?

24      THE DEFENDANT:  Yes, sir.

25      THE COURT:  Mr. Gutierrez, that simply means that, in

21

1    the event that government has no objection to your being

2    released today, that doesn't bind the court.  If the court

3    concludes, for whatever reason, that you should be held without

4    bond, then I can do that.

5              Do you understand?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Mr. Gutierrez, if you look at paragraph

8    11, it refers to a breach of agreement.  Have you read that?

9              THE DEFENDANT:  Yes, I have.

10             THE COURT:  And that's very important.  The whole

11   agreement is very important but that is quite important.

12             Do you understand?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And you've read it?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And you understand, Mr. Gutierrez, in

17   paragraph 12 that this agreement is binding only upon the

18   criminal division of the United States Attorney's Office for

19   the District of Columbia.  The agreement does not bind the

20   civil division of that office or any other United States

21   Attorney's Office except with respect to a promise made by the

22   Eastern District of Virginia as is detailed in footnote 1.

23             Do you understand what that means?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And footnote 1 appears on page 3.  All

22

1  right.

2          Now, paragraph 13 is a waiver of appeal and that

3  affords you, you have a right to appeal your sentence in the

4  case.  There may be differences as to the calculation and so

5  forth.  But it states that you are aware that the parties

6  calculation of the sentencing range under the sentencing

7  guidelines is not a promise of the sentence to be imposed upon

8  you by the court.

9          Do you understand?

10          THE DEFENDANT:  I do.

11          THE COURT:  The sentencing guidelines are really very

12  helpful to the court and it is a starting point for the court

13  but it is a guideline and nothing more.  Do you understand?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And then in paragraph 14, Mr. Gutierrez,

16  it states that this is the complete agreement.  Now, let me

17  take just another moment to explain that to you, Mr. Gutierrez.

18          If at some point after I accept your plea in this

19  case there is a dispute between you and your attorney with the

20  United States Attorney as to a promise that you say has been

21  made and that they're not keeping that promise, the only place

22  I will look to find that promise will be in this written

23  agreement.

24          So if you tell me that they promised something and

25  they're not following through with that promise, the only place

23

1    I will look is, one, that written agreement or the record of

2    this proceeding here today.  If government counsel makes a

3    promise to you today, then the government is just as bound by

4    that as it would be by the written agreement.

5           So let me put it to you in another way.  If you think

6    that there is something missing from this agreement that the

7    government has promised, then you should tell us now.

8           Now, is the agreement complete?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Have all of the promises made to you by

11   the government been set forth in this written agreement?

12          THE DEFENDANT:  They have, sir.

13          THE COURT:  And you realize that in the event of any

14   dispute, the only place I will look is this plea agreement?

15          THE DEFENDANT:  I do, sir.

16          THE COURT:  Looking at the bottom of page 5, Mr.

17   Gutierrez, under the signature of the Assistant United States

18   Attorney, it states that you've read the agreement, you have

19   discussed it with your attorney, you fully understand it, you

20   agree to it without reservation, you do so voluntarily and of

21   your own free will and you realize that you would be legally

22   bound.

23          And no threats have been made to you.  You're not

24   under the influence of anything that could impede your ability

25   to understand the agreement fully and that you are pleading

24

1    guilty because you are, in fact, guilty of the offense

2    identified in the information.

3            Is that your agreement?

4            THE DEFENDANT:  Yes, sir, it is.

5            THE COURT:  Again looking at that page on page 5, it

6    appears to be signed January 10, 2006, and it appears to be

7    your signature.  Is that your signature?

8            THE DEFENDANT:  Yes, it is.

9            THE COURT:  And how much time did you have to read

10   the agreement and consider the agreement before you signed it?

11           THE DEFENDANT:  Two to three weeks, sir.

12           THE COURT:  Two to three weeks.  And you read it?

13           THE DEFENDANT:  Yes.

14           THE COURT:  You discussed it with your attorney?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  All right.  Mr. Gutierrez, let me ask you

17   whether at this time you are under any type of parole or

18   supervised release in any other case?

19           THE DEFENDANT:  No, sir.

20           THE COURT:  Do you have any other charges pending

21   against you that you know of?

22           THE DEFENDANT:  No, sir.

23           THE COURT:  Are you a citizen of the United States?

24           THE DEFENDANT:  I am not.

25           THE COURT:  Do you realize that it is possible that

1   entering a plea in this case and if the court finds you guilty

2   based upon that plea, that it may be that you would not be able

3   to reenter this country?

4            THE DEFENDANT:  I do, sir.

5            THE COURT:  That there's a possibility that you could

6   be deported from the country because of this action?

7            THE DEFENDANT:  I do, sir.

8            THE COURT:  And let me just step back for a moment,

9   Mr. Gutierrez.  I told you that this agreement that you've

10  entered into is only binding upon the United States Attorney's

11  Office, that is, the criminal division.  For example, it is not

12  binding upon the Internal Revenue Service and it doesn't bind

13  any other state, local or federal prosecutor and it does not

14  bar or compromise any civil tax or administrative claim pending

15  or that may be made against you.

16           Do you understand what that means, Mr. Gutierrez?

17           THE DEFENDANT:  I do, sir.

18           THE COURT:  That if IRS, the Internal Revenue

19  Service, in their wisdom concludes that there is a tax due

20  based upon what you've received, if they conclude, come up with

21  a figure that is different than what is in here, they are not

22  bound by what is in here.  And I know because I use to be an

23  attorney with the Department of Justice in the tax division.

24  I've been on the other side.

25           Do you understand that?

26

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Okay.  Now, understanding all of these

3   matters, Mr. Gutierrez, do you still wish to enter a plea of

4   guilty to the charge?

5          THE DEFENDANT:  I do, sir.

6          THE COURT:  Mr. Gutierrez, I am now going to ask the

7   Assistant United States Attorney to make a statement of the

8   facts in this case, and after she has completed her statement,

9   I'm going to have you placed under oath and I will ask you

10  about the facts in the case.

11         But I want you to have a sit with your attorney and

12  listen very carefully to her statement.

13         Ms. Menzer.

14         MS. MENZER:  Thank you, Your Honor.

15         If this case had proceeded to trial, Your Honor, the

16  government would have proven by competence evidence beyond a

17  reasonable doubt that the Inter American Developmental Bank,

18  hereinafter referred to as IDB, is a public international

19  organization whose shareholders are the governments of 47

20  countries, including the United States of America.

21         The IDB's purpose is to contribute to the

22  acceleration of economic and social development of its regional

23  developing member countries.  The IDB relies upon public and

24  private investors to fund its projects through the issuance of

25  interest bearing bonds.

27

From June 16th, 1975 to September 20, 2005, Defendant Otto Gutierrez, Jr., a native of Costa Rica, was employed by the IDB in its Washington, D.C. headquarters.

Defendant Otto Gutierrez, Jr., began his career at the IDB as a messenger. While employed at the IDB, Defendant Otto Gutierrez, Jr., obtained a BA degree in economics and a Master's degree in development banking.

In October 1976, Defendant Gutierrez was promoted to Accounting Assistant and then promoted to Accountant in November, 1980. Defendant Gutierrez was promoted to Senior Accountant in May 1992 and subsequently to Principal Accountant in August 1994. On March 1st, 1997 Defendant Gutierrez was promoted to the Chief of the Administrative Accounting Section.

During his tenure as section chief, Defendant Gutierrez also served as the backup to his supervisor, the Chief of the Budget Management Division.

At the time he was removed from his position on September 20th, 2005, Defendant Gutierrez's annual net salary was a $141,252. As Chief, Defendant Gutierrez oversaw it and supervised the payment of the IDB's administrative expenses, including payments for individual consultants, consulting firms, travel expenses and utilities.

On an annual basis, Defendant Gutierrez oversaw and was responsible for the payment of in excess of $100,000,000 to various domestic and foreign venders on the IDB's behalf. He

28

1    supervised as many as 20 other individuals who were responsible

2    for creating vendor accounts, entering invoices, and processing

3    payment requests.

4            Defendant Gutierrez or his second in command

5    regularly reviewed the invoices and payment requests and, where

6    appropriate, authorized final payments.

7            When Defendant Gutierrez became Chief of the

8    Administrative Accounting Section, the IDB relied upon an

9    accounting system known as Millennium.  Under this system, the

10   Administrative Accounting Section forwarded payment requests to

11   the Finance Department that would issue either paper checks or

12   electronic payments to the vendors.

13           From November 20th, 1995 through January 31st, 1998,

14   Defendant Gutierrez accessed the Millennium database, created

15   four fictitious invoices in the name of Bernardo Gutierrez and

16   approved the issuance of checks for a total of $48,120.

17           Once he received these checks from the Finance

18   Department, Defendant Gutierrez deposited these checks into his

19   personal checking account.  Knowing that the accounts payable

20   accrual accounts are not reviewed on a regular basis, Defendant

21   Gutierrez debited this type of account to generate these

22   payments and to conceal his scheme from the IDB.

23           On or about April 7th, 1997, Defendant Gutierrez

24   accessed the Millennium database and created a fictitious

25   vendor account in the name of Antonio Gutierrez.  From April

29

7th, 1997 through March 26th, 2002, Defendant Gutierrez accessed the Millennium database, created 21 invoices and approved the issuance of checks for a total of $175,532.

Again, Defendant Gutierrez debited in an accounts payable accrual account to generate payment and to conceal his scheme from the IDB. Once he received the checks, the defendant deposited them into his personal checking account.

Beginning in August 2002, the IDB changed its accounting system into a new system known as Lawson. On or about February 10th, 2003, Defendant Gutierrez accessed IDB's Lawson's database and created a fictitious vendor account in the name of Antonio Gutierrez.

From on or about February 10th, 2003 to on or about July 14th, 2005, Defendant Gutierrez accessed IDB's Lawson database on 23 occasions and directed IDB's bank in the state of New York to electronically transmit a total of $199,631 outside the state of New York to bank accounts controlled by Defendant Otto Gutierrez, Jr.

As he previously entered into the Millennium database, Defendant Gutierrez debited these payments to an accounts payable accrual account to conceal his scheme from IDB.

On August 2nd, 2005, Defendant Gutierrez immediate supervisor confronted him with several of these payments. Defendant Gutierrez acknowledged that the payments in question

30

1  were deposited into his account but denied any knowledge as how

2  these payments were made.

3          Shortly thereafter, however, Defendant Gutierrez

4  returned to his office logged onto the Lawson database and

5  attempted to delete records relating to the fictitious Antonio

6  Gutierrez vendor account.

7          Defendant Gutierrez was placed on administrative

8  leave pending a decision on his employment status.  On

9  September 20th, 2005 the IDB issued a letter to the Defendant

10  Otto Gutierrez, Jr., advising him that IDB was terminating his

11  employment.

12          On September 28th, 2005, Defendant Gutierrez applied

13  over the telephone with Countrywide Home Loans, Inc., for a

14  residential line of credit.  In response to questions

15  concerning his current employment, Defendant Gutierrez falsely

16  stated that he was still employed by the IDB earning $16,000

17  per month.

18          On October 25th, 2005, Defendant Gutierrez and his

19  wife closed on this loan with Countrywide Home Loans, Inc., and

20  were extended a $137,300 line of credit.

21          THE COURT:  All right.  Mr. Gutierrez, would you come

22  back to the lectern with your attorney, and at this time I

23  would ask the clerk to place you under oath.

24      (Defendant sworn.)

25          THE COURT:  Mr. Gutierrez, you've heard the statement

31

1    of facts made and read to you by the Assistant United States

2    Assistant Attorney.  Did you listen very carefully to what she

3    had to say?

4              THE DEFENDANT:  I did.

5              THE COURT:  And I ask you under oath whether the

6    statement of facts and the facts set forth in the statement are

7    true?

8              THE DEFENDANT:  They are, sir.

9              THE COURT:  And you are stating that under oath to

10   the court?

11             THE DEFENDANT:  I am, sir.

12             THE COURT:  Before I go forward, Mr. Park is there

13   anything that you would like to amplify with respect to the

14   facts in this case?

15             MR. PARK:  Just one point, sir.

16             THE COURT:  Yes.

17             MR. PARK:  Toward the end of --

18             THE COURT:  Of the written statement?

19             MR. PARK:  That's correct, sir.  In the government's

20   statement of the facts, with regard to the application that he

21   made for a line of credit, Your Honor, this was --

22             THE COURT:  Is that on the last page?

23             MR. PARK:  That's correct, Your Honor.

24             THE COURT:  Yes.

25             MR. PARK:  While Mr. Gutierrez doesn't deny that,

32

again Your Honor asked me to amplify it.

THE COURT:  Right.

MR. PARK:  What the situation was, Your Honor, prior to being discharged from his employment, prior to all these issues coming into play, he had applied for a home equity loan with the bank along with his wife.  They filled out a canned written application and truthfully indicated that he still worked there.  There came a time afterwards --

THE COURT:  Now, was that prior to the time that he left the job?

MR. PARK:  That's correct, Your Honor.  When he first made the handwritten application.

THE COURT:  I see.

MR. PARK:  Now, then the charges came about.

THE COURT:  But at that time he, I guess, understood that the charges were coming?

MR. PARK:  When he filled out the application initially?

THE COURT:  Yes.

THE DEFENDANT:  No, sir.

THE COURT:  Did not.  All right, go ahead, Mr. Park.

MR. PARK:  And then the charges came about, Your Honor.  Then there came a time in the loan process where, as is the practice, they type everything up and present it to Mr. Gutierrez.  They presented it to him.  He failed to read it

1    thoroughly and for whatever reason he made the bad judgment of

2    signing that typewritten document, thinking that it was already

3    approved when he made the written application before he knew

4    about the charges.

5             That's all I wanted to state at this point.

6             THE COURT:  So what you are saying is that it is his

7    position that he did not intend to mislead the lender?

8             MR. PARK:  That's correct, Your Honor.

9             THE COURT:  And is the representation made on your

10   behave by Mr. Park true and accurate?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  Are there any other comments that you

13   wish to make with respect to this statement of facts?

14            THE DEFENDANT:  No, sir.

15            THE COURT:  Now, Mr. Gutierrez, when I look at the

16   statement, the pages are unnumbered but I think there are four

17   pages and it appears to be signed by you on February 16, 2006.

18   That's today.

19            Did you sign that in open court today?

20            THE DEFENDANT:  I did, sir.

21            THE COURT:  And remembering that you are under oath,

22   is that a true and accurate statement of the facts in this

23   case?

24            THE DEFENDANT:  Yes, it is.

25            THE COURT:  So you're swearing that or affirming that

34

1    before the court?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Mr. Gutierrez, I take it then it is true

4    that, well, you're a native of Costa Rica.  Is that right?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  And I understand that's a very beautiful

7    country.  When did you first go to work with IDB?

8              THE DEFENDANT:  Exactly?  1975.

9              THE COURT:  1975.

10             THE DEFENDANT:  1974.

11             THE COURT:  And you were employed as a messenger at

12   that time.  Is that right?

13             THE DEFENDANT:  Yes, sir, while I was attending

14   school.

15             THE COURT:  And you did not have a bachelor's degree

16   at that time?

17             THE DEFENDANT:  Not at that time.  No, sir.

18             THE COURT:  And then you advanced pretty high in the

19   company.

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And in your job you oversaw and

22   supervised the payment of administrative expenses?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  And other expenses.  And you supervised

25   as many as 20 other individuals?

35

1          THE DEFENDANT:  Correct.

2          THE COURT:  Now, at some point, Mr. Gutierrez, it

3   appears, it looks like it's between November 1995 and January

4   1998 that you accessed the Millennium database.  Did you have

5   authority to access that database?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And that you created four fictitious

8   invoices in the name of Bernardo Gutierrez.  Did you do that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And who is Bernardo Gutierrez?  No such

11   person?

12          THE DEFENDANT:  No.

13          THE COURT:  And why did you do that Mr. Gutierrez?

14          THE DEFENDANT:  Stupidity.

15          THE COURT:  I didn't hear you.

16          THE DEFENDANT:  Stupidity.

17          THE COURT:  Well, stupidity.  But you mean you made

18   an error or you did it for a reason?

19          THE DEFENDANT:  Monetary gain, I guess.

20          THE COURT:  And when you accessed that account, what

21   did you do after that?

22          THE DEFENDANT:  I'm sorry.  I don't understand

23          THE COURT:  Well, once you accessed the account, how

24   did you obtain money from this company or this bank?

25          THE DEFENDANT:  Moneys were transferred into the

1   accounts.

2           THE COURT:  So you wrote checks?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Payable to Bernardo Gutierrez?

5           THE DEFENDANT:  No.

6           THE COURT:  Tell me what happened.

7           THE DEFENDANT:  Moneys were deposited and then

8   expensed through different creditors of my own.

9           THE COURT:  Of your own.

10          THE DEFENDANT:  Mortgages.

11          THE COURT:  Now, did you have any authority to do

12  that, Mr. Gutierrez?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  And at the time you did it, did you think

15  that you had authority to do that?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Had you sought anyone's permission or

18  authorization to do that?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  And why did you think that you would get

21  away with doing that?

22          THE DEFENDANT:  At the time I have no answer.

23          THE COURT:  Did you take into consideration, as it

24  indicates here, that the accounts payable, that is, the accrual

25  accounts were not reviewed on a regular basis?

37

THE DEFENDANT:  They were.  I'm sorry, sir.

THE COURT:  Take your time.

THE DEFENDANT:  The accounts were not reviewed as often as other accounts were.  It was an account that is used to move entries in and out by the turn of accrual.  It's not reviewed as often as it probably should.  So that's --

THE COURT:  All right.  And so was the purpose of doing that to conceal what you had taken from the bank?

THE DEFENDANT:  I guess it was, sir.

THE COURT:  And then it indicates that from 1997 to 2002 you accessed the Millennium database and you created 21 invoices and approved the issuance of checks for a total of $175,532.  Is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  And did you do that at the request of the bank or your supervisors?

THE DEFENDANT:  No, sir.

THE COURT:  And what did you do with that money Mr. Gutierrez?

THE DEFENDANT:  It was also deposited in my account and disbursed throughout -- it was deposited and also distributed, disbursed for the same reasons as before.

THE COURT:  Personal matters?

THE DEFENDANT:  Yes, sir.

THE COURT:  So it was not bank business?

38

1          THE DEFENDANT:  No, sir.

2          THE COURT:  And then apparently in August 2002, IDB

3   changed its accounting system to a new system known as Lawson.

4   Can you tell me what Lawson means?  If it raises a problem,

5   then you don't have to tell me.  I don't know whether that's

6   some internal mechanism that --

7          THE DEFENDANT:  No.  Lawson is just the name of the

8   accounting system.

9          THE COURT:  All right.  And you made some changes to

10  accommodate that as well I gather?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And it indicates that by setting up a

13  fictitious vendor account in the name of Antonio Gutierrez --

14  by the way who is that?

15         THE DEFENDANT:  There is no --

16         THE COURT:  Fictitious --

17         THE DEFENDANT:  Antonio is my middle name, sir.

18         THE COURT:  Middle name.  But when you put that in,

19  were you trying to show that it was you?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  All right.  And that you electronically

22  transmitted a total of $199,630 outside the state of New York

23  to bank accounts controlled by you.  Is that correct?

24         THE DEFENDANT:  That's correct.

25         THE COURT:  Now, when you were doing all of this, Mr.

39

1    Gutierrez, did you have any belief whatsoever that you were

2    authorized to make these deductions or write these checks for

3    those purposes?

4                    THE DEFENDANT:  No.

5                    THE COURT:  And did you realize that you were

6    violating the law when you did it?

7                    THE DEFENDANT:  I did, sir.

8                    THE COURT:  And this money that you received, Mr.

9    Gutierrez, was all of this money used by you?

10                   THE DEFENDANT:  Yes, sir.

11                   THE COURT:  For personal matters?

12                   THE DEFENDANT:  Yes, sir.

13                   THE COURT:  What did you do with it, for example?

14                   THE DEFENDANT:  It was deposited in my main checking

15   account and it was just a process of paying bills throughout.

16                   THE COURT:  Paying your bills?

17                   THE DEFENDANT:  Yes, sir.

18                   THE COURT:  Did you buy anything?

19                   THE DEFENDANT:  No, sir.

20                   THE COURT:  You had bills outstanding for $407,000?

21                   THE DEFENDANT:  This is over a period of a year or

22   two.  (Pause.)  For clarification, when the money was

23   deposited, it was not intended to purchase specific items per

24   se.  It was just there and it was allocated throughout.

25                   THE COURT:  When it was deposited, it was deposited

1    for your personal use.  Is that correct?

2            THE DEFENDANT:  Right, my personal account.

3            THE COURT:  It had nothing to do with the work or the

4    activities of the bank itself?

5            THE DEFENDANT:  No.

6            THE COURT:  So, Mr. Gutierrez, knowing all of that,

7    all of those facts, are you pleading guilty to the charge of

8    wire fraud because you are, in fact, guilty of that charge and

9    for no other reason?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Is there anything else that you would

12    like to say about your plea at this time?

13            THE DEFENDANT:  No, sir.

14            THE COURT:  Before I go forward, is there any further

15    representation the government wishes to make?

16            MS. MENZER:  No, Your Honor.  I do want to put on the

17    record that, Mr. Gutierrez, as part of the plea has executed a

18    waiver of extradition and the government would not be asking

19    for step back on account of that.

20            THE COURT:  Too early to have a sit, Mr. Gutierrez.

21            Mr. Gutierrez, based upon your answers, the

22    representations made by the government, your responses to my

23    questions under oath, the statement of facts that you have now

24    admitted to, those facts under oath, I find, first, that I'm

25    satisfied that there is a factual basis to support your plea in

41

1    this case.

2              I'm satisfied that you are entering this plea of your

3    own free will and I'm satisfied that you understand the

4    potential or the consequences of your plea in this case.

5              So, first, I will accept the plea agreement that has

6    been entered into this case, and further I will accept the plea

7    that has been entered in this case.  The court will find you

8    guilty of the charge set forth in the information.

9              Let me ask you this, Mr. Gutierrez.  I see some

10   people in the court.  I don't know who they are.  But do you

11   have any family or friends in court today?

12             THE DEFENDANT:  Not present.  No, sir.

13             THE COURT:  Not present.

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Now, I have in my hand a waiver of right

16   to contest extradition, and it indicates, "As a condition of my

17   agreement with the United States Attorney's Office for the

18   District of Columbia that I," that is you, "convicted in the

19   United States of America of having committed the crime of mail

20   fraud" as a result of your embezzlement from the bank, you

21   consent to your extradition to the United States from any other

22   country whether or not such country has a formal extra edition

23   treaty with the United States.

24             In addition, you waive any rights that you may have

25   under the law of your native country, Costa Rica, with respect

42

to extradition from that country to the United States.

"I," you say, "being duly represented by competent counsel, voluntarily and knowingly execute this waiver at the United States Courthouse in the District of Columbia before the Honorable John Garrett Penn on February 16, 2006."

And then that is signed by you, Otto Antonio Gutierrez, Jr. Is that your signature?

THE DEFENDANT: Yes, it is.

THE COURT: Do you have any questions about that waiver?

THE DEFENDANT: No, sir.

THE COURT: Have you discussed it with your counsel?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand that no matter where you are, if you should leave the country, you waive your right to extradition?

THE DEFENDANT: Yes, sir.

THE COURT: And I am satisfied.

MR. PARK: Your Honor, may I make a clarification about that waiver? As you read it and as I recall it, it indicates mail fraud but again it is wire fraud.

THE COURT: Did I read mail fraud?

MS. MENZER: I incorrectly put mail fraud, Your Honor. If Mr. Gutierrez could initial it, I will change it to wire fraud.

43

1          THE COURT:  All right.  I will hand this to you, Mr.

2     Gutierrez, and I would ask -- I have written in "wire" over

3     "mail", crossed out "mail" -- I would ask that you look at it

4     and then initial that.

5          THE DEFENDANT:  (Complying.)

6          THE COURT:  All right, counsel, now with respect to

7     sentencing to this case, 70 days would fall, I believe, in the

8     latter part of April or the first part of May.  What about May

9     3rd?

10          MR. PARK:  Your Honor, could I ask that it be set the

11     week after sometime in the week of the 8th?

12          THE COURT:  I have no problem in setting that later

13     but I would prefer to set it on the week of May 15th.

14          MR. PARK:  In that case, Your Honor, how about the

15     last week of April?

16          THE COURT:  The last week of April?

17          MR. PARK:  Yes, sir.

18          THE COURT:  All right.  What day would you like?

19          MR. PARK:  Actually, any day the court pleases, Your

20     Honor.

21          THE COURT:  April 25?

22          MR. PARK:  That will be fine.

23          MS. MENZER:  Yes, Your Honor.

24          THE COURT:  We will set that at 10:00.

25          I will request a presentence report in this case, Mr.

44

1    Gutierrez, and you will be required to work with the probation

2    office and they will be collecting information from you and

3    perhaps your family in order to prepare a report.

4         Once that report is reduced to writing, it will be

5    submitted to you and it will be submitted to the government.

6    Both sides will have an opportunity to read it, to note any

7    corrections that they may have or they wish to make.

8         And finally after all that is done, it will come to

9    the court, and once the court reviews it, it will be before the

10   court at the time of sentencing.  And what is contained in that

11   report will be a guide as to the sentence the court may impose

12   in this case.

13        Do you understand that?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  I would also provide that if counsel wish

16   to file a sentencing memorandum in the case that that should be

17   filed 12 days prior to the sentencing date.  That will give the

18   court an opportunity to review it.

19        Is there any objection to that?

20        MS. MENZER:  Your Honor, there is no objection from

21   the government.  However, if the presentence report is not

22   prepared in time, should we call chambers?

23        THE COURT:  Should you what?

24        MS. MENZER:  Call chambers?

25        THE COURT:  Yes.  Yes.  If there is some problem,

45

1    call chambers and it may be that we can shorten that time frame

2    or maybe even change the date of sentencing, if necessary.

3              Now, on the matter of bond or release pending

4    sentencing, do counsel wish to be heard?

5              MR. PARK:  I do, Your Honor.

6              THE COURT:  Yes.

7              MR. PARK:  Your Honor, I would ask the court grant

8    him bond.  As soon as he has learned of, not the charges, but

9    the allegations or assertions made by his employer, at that

10   time he had no idea that these charges, well, he suspected but

11   there weren't any charges that were brought that he knew of.

12             So at that time, he immediately retained counsel, me,

13   and retained me to deal with his employer as far as paying back

14   whatever they might want on a civil basis.  And also he asked

15   me immediately to see what the government intends to do with

16   regards to this matter.

17             So I offer that to the court to show that as soon as

18   this came to his attention by his employers, he's cooperated

19   and he was ready and willing to face the consequences for his

20   actions before the government brought any charges while they

21   were still investigating it.

22             Your Honor, I would ask the court to find that that

23   certainly shows that he is not a flight risk by any means.  He

24   has family in the Northern Virginia area with young children.

25             To reiterate, this is something that he wants to take

46

responsibility for and do whatever he needs to do with regards to whatever the court sentence is and get back to his family however long or short that may be.

It's obviously not a crime of violence and he has never been charged with any crime and he has no prior record whatsoever.  Not only has he been cooperating with the government but we've been in constant contact with the bank to try work out what we can with regards to restitution.  And for those reasons, Your Honor, I ask the court to continue or let him on bond as the government has no objections as well, Your Honor.

THE COURT:  And the government does not have any objections to personal recognizance or bond?

MS. MENZER:  No, Your Honor.  We don't have any objections to personal recognizance at this time.  However, Mr. Gutierrez was, by agreement would turn over his passport today. And I believe he does have it with him.

THE COURT:  He is prepared to do that?

MR. PARK:  Yes, Your Honor.

THE COURT:  All right.

MS. MENZER:  And assuming that that is the only passport he has, the government would have no objection.

THE COURT:  Mr. Gutierrez, would you step up.  Mr. Gutierrez, is that the only passport you have?

THE DEFENDANT:  Yes, sir.

47

            THE COURT:  And you will not seek any other passport
from any other source?

            THE DEFENDANT:  No.

            THE COURT:  All right.  Then I'm going to release you
on your personal recognizance.  That is your personal promise
to return to the court on the dates set by the court.

            Are you employed at this time, Mr. Gutierrez?

            THE DEFENDANT:  No, sir.

            THE COURT:  I will make these conditions.  You will
be released on your personal recognizance, provided you turn
over the passport and, of course, you've already signed the
waiver of extradition.

            In addition, you may not have in your possession any
illegal or dangerous drugs.  You may not have in your
possession at anytime any guns or dangerous weapons, not
withstanding any state law that would permit you to carry it.
You can't carry it now and you cannot have it.

            I'm going to request a presentence report and you
must meet with the probation officer at such time as they set
to meet with you and/or members of your family.

            Do you understand that?

            THE DEFENDANT:  Yes, sir.

            THE COURT:  Now, if you fail to report back for
sentencing or to follow of the conditions set by the court, the
court can issue a bench warrant for your arrest.

48

1          If there is some issue that comes up, you should

2   discuss that with your attorney and I'm sure he will address

3   that with the court and with counsel for the government.  But

4   you must keep all of your dates, and if you don't keep those

5   dates, why, then, of course, as I said, the court can issue a

6   bench warrant for your arrest.

7          Do you understand that?

8          THE DEFENDANT:  I do, sir.

9          THE COURT:  Any other conditions that the government

10  would like set?

11         MS. MENZER:  No, Your Honor.

12         THE COURT:  All right.  And I think the clerk is

13  preparing an order which you will sign and then I will sign.

14      (Proceedings concluded at 12:37 p.m.)

15                   CERTIFICATE OF REPORTER

16      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

17  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

18

19

20  WILLIAM D. MCALLISTER
    COURT REPORTER

21

22

23

24

25

