# ORIGINAL

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America          Docket No. CR 06-0006 JGP
                                  Washington, D.C.
    vs.                           Wednesday, May 17, 2006
                                  10:35 a.m.

Otto A. Gutierrez, Jr.

        Defendant                      **FILED**

                                    **JUN - 6 2008**

                                Clerk, U.S. District and
                                  Bankruptcy Courts

                    Transcript of Sentencing
              Before the Honorable John Garrett Penn
                    United States District Judge

APPEARANCES:

For the Government:       Susan Beth Menzer, Esq.
                          Kelly Bender,
                            Special Agent

For the Defendant:        Chong C. Park, Esq.

For the Probation Office: Monica Johnson

Reporter:                 WILLIAM D. MC ALLISTER, CVR-CM
                          Court Reporter

Reported by Voice Writing and transcribed using SpeechCAT

Pages 1 through 29

2

1                    P R O C E E D I N G S

2        (Defendant present.)

3             THE CLERK:  Criminal Action 06-0006, United States of

4    America versus Otto A. Gutierrez, Jr.  Ms. Menzer or the

5    government, Mr. Park for the defendant, Ms. Johnson

6    representing the probation office.

7             THE COURT:  Good morning, counsel.

8             MS. MENZER:  Good morning, Your Honor.

9             MR. PARK:  Good morning, Your Honor.

10            THE COURT:  Are their preliminary matters before we

11   go forward?

12            MS. MENZER:  No, Your Honor,

13            MR. PARK:  No, Your Honor.

14            THE COURT:  This matter is before the court for

15   sentencing.  As counsel know, after accepting the plea in this

16   case, I requested the presentence report.  It has been made

17   available.  The probation officer is here in the courtroom.

18   Counsel were furnished with copies of the report.  As I

19   understand it, there was no objection to any part of the report

20   with the exception that the defendant did object to one

21   paragraph, and that's been noted by the probation officer.  I

22   think it was paragraph number 17.

23            THE PROBATION OFFICER:  Your Honor, that should be

24   paragraph 16 of the presentence report.

25            THE COURT:  Paragraph 16.  All right.  I have

3

1   discussed the report with the probation officer this morning.

2   By the way I should note that -- well, I did discuss the report

3   with the probation officer this morning.

4           The record should also reflect that I did receive a

5   letter from the bank in this case and I received, I think, two

6   letters each one from friends of the defendant, neighbors, I

7   believe.

8           All right.  Are we ready to proceed?

9           MR. PARK:  Yes, Your Honor.

10          THE COURT:  Before we do go forward, let me just

11  point to a couple of other factors.  It has been calculated

12  that the total offense level in this case is 22.  The criminal

13  history category in the case is one.  The total offense level

14  takes into consideration the three-level reduction for the fact

15  that the defendant entered a plea.  That would be two levels

16  for the entry of the plea and then the additional level which

17  it is my understanding the government does not object to.  That

18  being the case I assume, I take that as a motion for the

19  government to add that reduction as well.

20          The government doesn't object that to that statement?

21          MS. MENZER:  That is correct, Your Honor, we do not.

22          THE COURT:  Okay.  There are two issues of

23  enhancement, and looking over the report and considering the

24  other factors before the court, I imposed both of those

25  enhancements.

4

One was the abuse of a public or private trust which added two.  The other one was the offense involved an otherwise sophisticated means which added two.

Now, I've told the parties which additions the court has made.  And if there is any objection or if counsel wish to be heard, I am certainly willing to hear counsel.

MR. PARK:  I do, Your Honor.  That was part of my argument.  With regards to the increases that Your Honor just spoke of, as for the enhancement, the two point enhancement for abuse of position of trust, we will not be making an argument on that.

THE COURT:  There is no objection on that?

MR. PARK:  To that, no, Your Honor.

THE COURT:  All right.

MR. PARK:  As for the sophisticated means, I would object to that, Your Honor.

We submit the manner in which the crime was committed was not a sophisticated means.  We take this position because the great majority of his actions were situations where he created invoices in his name and simply wrote checks in his name and deposited into his own personal bank account or otherwise wire-transferred the money in that same manner.  Again, it was his own name and in his own bank account.

It was not a situation where he diverted the funds to a secret bank account or a bank account in anybody else's name.

5

It was his name only.

As the parties have out in the sentencing memorandums, a sophisticated means as defined by the guidelines and in case law is an especially complex or an especially intricate offense conduct.

Certainly this is not a situation where Mr. Gutierrez simply pocketed the money, if you will. However, it does not involve an especially complex or especially intricate conduct because again, Your Honor, I would point to the fact that it was done in a manner which is relatively easily observable and could have been found out because he used his own name, put it into his own bank account under his own name.

So I wouldn't argue that it was purely a simple thing that he did, but I would certainly argue it doesn't fall into the level of "especially complex" or "especially intricate" conduct.

So on that ground, Your Honor, I would ask that the two points for sophisticated means not be applied under the guideline.

THE COURT:  All right.

Government.

MS. MENZER:  Your Honor, obviously the court has read the government's memorandum as well as the presentence report in which we both have agreed that this enhancement should apply.

6

1      I disagree with a number of things that Mr. Park

2 said.  First of all, the invoices and the payments were not in

3 the  defendant's name.  They were in a different Gutierrez's

4 name.  They were in Anthony Gutierrez or Bernardo Gutierrez.

5      Your Honor, I have not done the search.  I actually

6 tried to do it before, but our computer is down.  I know for a

7 fact that we have 350, I assume 350 now Assistant United States

8 Attorneys.  I have had at least three criminal defendants with

9 last Gutierrez.

10      I do not think it's an uncommon name.  That's number

11 one.  So I don't think there's any reason because he used the

12 last name, Gutierrez, as the government pointed out in its

13 memorandum, one of the reasons why the government alleges he

14 used the name Gutierrez was so that he could deposit the checks

15 into his bank account.  That was something he needed to do to

16 be able to fulfill his scheme.

17      So Gutierrez, the fact that it was not in name, is in

18 another person's name, who just happens to have the same last

19 name, a million dollars a year, he was in charge of paying.  I

20 have not counted the number of invoices that entails, but it is

21 substantial.

22      What Mr. Park is saying is that the bank should have

23 know because they should have gone through line by line by line

24 by line and assumed that their chief financial officer or

25 accountant was stealing from them by writing checks, additional

7

checks to himself.

He probably could have been entitled to those. They would have had to look at every single payment, audited every single payment in order to find out that he had done this crime. I disagree with him. I think it was sophisticated.

In terms of into his own bank account, the government also pointed out in its memorandum that the records at the bank were not in the name of the bank account especially when it went into the wire transfers. It was just a bank account number.

The bank wouldn't have been able to look at the records and been able to see that he was taking additional payments. So I disagree with that. There was some concealment there and it was more sophisticated than our typical bank embezzlement case. Our typical bank embezzlement case is, checks come into the bank, employee takes the check, deposit it to their own personal bank account. That's like a typical, as we talk about most of these cases, they were tax cases.

The case that was cited by defense counsel was a tax case and it basically said that failing to record entries, failing to make records is not sophisticated. That's just how people commit the crime. That's not how people typically commit an embezzlement. He did more. He created fictitious invoices under names that were not his own. There was no reason for the bank to check and he actually debited other

8

1   accounts so the bank would know not to look at those specific

2   payments.  He was basically saying, it's okay, these are clear.

3          So I definitely would disagree with that.  This would

4   definitely fit under the sophisticated means because not only

5   did it help conceal the crime and I think there are two parts

6   that sophisticated means can be.  I would say that not only did

7   it help conceal the crime, it actually helped Mr. Gutierrez

8   commit the crime.

9          THE COURT:  Mr. Park.

10          MR. PARK:  Your Honor, the government proffered to

11   the court that all of these payments were just made in his own

12   last name.  That's just not the case.  Of all the transactions

13   that were involved with the exception of, I believe, no more

14   than four, the names that Mr. Gutierrez used was Antonio Otto

15   Gutierrez, which is his name.  Well, I'll take that back.  It's

16   Otto Antonio Gutierrez.

17          THE COURT:  It's not Antonio.

18          MR. PARK:  It's Otto Antonio Gutierrez, this is his

19   true legal name.

20          Thank you.

21          THE COURT:  All right.  Well, I have given a lot of

22   thought to this issue.  I still conclude that the two-point

23   increase for the use of sophisticated means should apply in

24   this case and is warranted.

25          It appears to the court that the defendant, even

1  looking at the statement of facts, used especially complex and

2  intricate conduct in both the execution and the concealment of

3  the offense as stated in the statement of facts.

4      He hid his transactions by creating two fictitious

5  individuals.  Bernardo and Antonio Gutierrez.  By setting up a

6  fictitious vendor profile and by creating invoices in those

7  fictitious individuals' names, he did more than just what we

8  would normally see.

9      He changed his methods to adapt to the bank's

10  changing the accounting system and he made sure that the money

11  was withdrawn from the accounts which were not regularly

12  reviewed.  Apparently after his crime was detected, the

13  defendant accessed the accounting system and attempted to

14  delete his fictitious vendor profile.

15      So this certainly does not appear to be an innocent

16  act.  I think it is clear that the defendant did this for a

17  reason.  It wasn't that he was just using his name and put in

18  another name.  I think it was very smart of him, I suppose, to

19  create it that way because it was not very easy to detect what

20  was going on.

21      Given all of these, and the last thing that I would

22  note is that, through using these methods, he was able to avoid

23  detection for a period of ten years.

24      So I will deny the defendant's objection for the

25  reasons set forth in the court today and reasons that will be

10

1    set forth in a brief memorandum since this has become an issue.

2    I will provide that there was a sophisticated means here and

3    the two point increase is warranted.

4              Does counsel have anything else?

5              MR. PARK:  No, Your Honor.

6              THE COURT:  All right.  Now, I note a number of

7    persons in the courtroom.  Are any of them related to this

8    case?  Any family here?

9              MR. PARK:  All of the individuals that are here for

10   Mr. Gutierrez are his family members and family personally.

11             THE COURT:  They're in the front row?

12             MR. PARK:  They are in the front row.

13             MS. MENZER:  Your Honor, for the record, in the last

14   row are representatives from the bank.

15             THE COURT:  In the back row?

16             MS. MENZER:  In the back row.  And the other

17   individual in the court is also related to the bank.

18             THE COURT:  All right.  I don't want to suggest to

19   anyone in the courtroom that you have to be identified merely

20   because you're sitting the court.

21             But at time of sentencing, I like to whether the

22   defendant has his family here and whether the other party

23   involved, in this case the bank, is represented here.  Not that

24   it necessarily makes any difference as to what the sentence

25   will be in the case, but that's the reason I ask the question.

11

1       Mr. Park, do you wish to proceed?

2       MR. PARK:  First and foremost, Your Honor, I'd ask

3  the court to give significant weight and considerable

4  consideration to Mr. Gutierrez characteristics aside from the

5  actions that bring us here today.  I submit to the court that

6  he is a man whose characteristics and personality is completely

7  at odds with his actions that brings us here.

8       Mr. Gutierrez is a 55 year old man.  He's married to

9  Janice Gutierrez.  He's been married to her for 29 years and

10  together they raised two kids, Christine and Jay, 23 and 19

11  years old.

12       He came here to the United States on a work visa from

13  Costa Rica in 1965 and eventually obtain permanent residency

14  status.  When he came to the United States, he started his

15  career or worked as a messenger boy for the victims in this

16  case, the IDB.

17       He's a well educated man.  While he was working, he

18  at the same time earned his master's degree in banking.  He

19  worked his way up to a position, a proud and respectable

20  position, as chief accountant until he made, what he described

21  to be, a series of dreadfully poor judgments.

22       Since he was confronted and terminated by IDB, Mr.

23  Gutierrez has shown an outstanding level of operation both with

24  IDB and the government.  Immediately upon his termination, he

25  retained counsel to face the consequences, all consequences

12

1  that he could potentially be facing and he quickly learned of

2  the pending investigation through counsel and we promptly and

3  cooperatively met with the government and worked out the plea

4  agreement that's before the court today.

5          As for IDB's civil claim, Mr. Gutierrez has tendered

6  payment far in excess of the principal amount that was taken in

7  this case.  He has actually tendered that amount.  A check was

8  presented to him about a week ago and he signed off on it for

9  that amount, and again, far in excess of he principal amount.

10         THE COURT:  Has the check been honored?

11         MR. PARK:  Well, where the check comes from, Your

12 Honor, he's entitled to his pension come June 1, and originally

13 we had made arrangements for power of attorney to endorse that

14 check over to him, but the bank requested that Mr. Gutierrez,

15 before today, endorse the back of that check which they printed

16 out and presented to him.  We have gladly done that.

17         THE COURT:  What's the amount of the check?

18         MR. PARK:  $640,000, Your Honor.

19         I would submit, Your Honor, that that amount, again,

20 not only includes the principal amount, but also their

21 attorneys' fees, interest, their expense in investigating Mr.

22 Gutierrez's actions at the bank, and upon information and

23 belief to some extent, to some extent, the investigation that

24 the bank did or their consultant did to identify the

25 vulnerability of the accounting system.

13

So I submit, again, Your Honor, that that not only shows his level of cooperation but also shows a glimpse of the consequences, the punishment that he is already confronting aside from what Your Honor decides upon today.

He and his family members' financial security has been greatly affected by his actions and it will be in the future.

He's also confronted with the reality that his education, his experience and skills that he has worked so hard to earn as an accountant will be of little use to him and his family members from this point on from a financial perspective.

He also, obviously, faces the shame and the embarrassment among his friends and neighbors for what he has done.  As for his family and loved ones, despite their overwhelming support, he has and will continue to feel the tremendous amount of guilt, not only because he and his family's financial security is greatly jeopardized, not only because of that, but also because he feels that he has forever lost the pride and respect that he has always had among his friends and family for the accomplishments, the career accomplishments, and he's made and the accomplishments that he has made as a father.

Perhaps one of the most severe punishments that he will endure is the fact that he's likely to loose his right and privileges to reside in this United States and become a citizen

14

1    here.

2          While all his family members are citizens of this

3    country, he is not.  He is a permanent resident, and again, in

4    all likelihood he will lose that status and face deportation.

5    The part that perhaps bothers him the most in regards to that

6    is that he and his children, his children who will be here in

7    the United States as they are citizens, he will never have the

8    closeness that he has had with his children in the past because

9    of the deportation that he is facing.

10          THE COURT:  Has he received anything from the

11    government with respect to deportation?

12          MR. PARK:  Not at this point, Your Honor.

13          I'd also ask the court to find that Mr. Gutierrez is

14    not a recidivist.  Again, his personal background, his lack of

15    prior criminal history, his character, and his new found

16    respect for the law because of what's happened to him supports

17    our position in that regard.  He is not a man who is going to

18    commit anything like this ever again.

19          Your Honor, I made a brief argument in my sentencing

20    memorandum with regard to potential alcohol abuse.  Having

21    spoken with he and his wife regarding any history of substance

22    abuse, we agreed that it would be appropriate to ask Your Honor

23    to allow him to be evaluated for alcohol abuse.  In his

24    interview with the probation officer, Mr. Gutierrez did state

25    that he has never experience problems with alcohol, but again,

1   speaking with him and his wife, we believe that during certain
2   periods when he committed the crimes, alcohol may have
3   influenced his better judgment.

4          He continues to maintain that, as indicated in the
5   presentence report, that he is not an alcoholic and that may
6   very well be true, Your Honor, but again, having spoken with
7   his wife, I'd ask the court simply to allow him to be evaluated
8   in that regard.

9          I would ask the court to allow him to serve whatever
10  sentence, Your Honor, deems appropriate, at the minimum
11  security facility in Cumberland, Maryland so that he may have
12  some degree of closeness and contact with his family members.

13         I'd also ask Your Honor to, given his level of
14  cooperation and the surrender of his passport, I'd ask the
15  court to allow him to voluntary surrender himself to the Bureau
16  of Prisons at Cumberland at a time when and if Cumberland is
17  ready to receive him.

18         So in summary, again, Your Honor, I'd ask the court
19  to give significant weight to his personal background, his
20  characteristics, his level of cooperation and restitution in
21  this case and the severe consequences that he's already facing
22  in this case because of his actions, not only financially, but
23  emotionally as well for he and his family.

24         And upon considering the facts and circumstances in
25  the whole and Mr. Gutierrez's situation and his family

1    situation, I'd ask the court to sentence him within the very

2    low end of the sentencing guidelines range.

3                THE COURT:  Thank you.

4                Government.

5                MS. MENZER:  Thank you Your Honor.

6                First of all, the government does recognize the steps

7    that Mr. Gutierrez has taken since he was actually caught by

8    the bank after ten years of coming into work, day in and day

9    out, stealing from them every day.  He was caught.  Did he

10   confess?  No.  He didn't, Your Honor.  I think that's clear

11   from the government's memorandum and also from the bank.

12               They were forced to hire outside accountants.  They

13   were forced to hire outside attorneys to come in.  Mr.

14   Gutierrez did not tell them exactly what he did.  They had to

15   do a complete audit.  It cost hundreds of thousands of dollars.

16               Has he made a payment of restitution?  Yes, he has.

17   But that was the terms of the plea agreement.  He had to do

18   that.  That was one of the terms of the plea agreement.  He had

19   to pay the exact amount of money that he stole.

20               In terms of the additional moneys he's paid, that was

21   because the bank was going to file a civil action against him.

22   It had nothing to do with the criminal proceeding.  That was a

23   settlement of the civil claim that they had.  And according to

24   the civil law, they could ask for more than just the actual

25   money, they could ask for the interest, they could ask for the

17

amount of attorney fees they had to expend, they could ask for
the amount of money that they had to pay the outside accountant
in order to figure out the extent of his crime.

So all of those things really have nothing to do with
this case.  Those were things that he had to do.  He had to pay
the amount of restitution according to the terms of the
agreement; and the government agreed if a he did that, we would
not seek a fine and we have not, even though we could.

He had to pay those additional sums which it was more
than the amount he paid.  It was a negotiated settlement with
the civil attorneys because they threatened to sue him and they
had a right to do so.  So those two things aside, he did do,
but it wasn't because of the sentencing here.  He had no
choice.  He had to do them.

In terms of his cooperation, as I said, he did not
help the bank figure out exactly what he had done.  He admitted
that the money ended up in his account but denied knowing how
it got there.  That's basically what he did.

In terms of taking all of that into consideration,
nevertheless, the government has.  We've agreed to a three-
level reduction.  We didn't need to do that.  We've given him
the consideration of his cooperation with the government, his
early plea and with the bank by giving him that three-level
reduction.

So I don't think the court needs to consider any

18

1    additional reasons to give him a sentence at the lower end of

2    the guidelines.  I think what Mr. Gutierrez did was egregious.

3    It wasn't a one time thing.  It was a repetitive thing.  He not

4    only stole money, but he basically lied to his coworkers for a

5    long period of time, over, over and over again.

6        Poor judgment?  This wasn't poor judgment.  This was

7    intentional fraud.  He intended to take the money and he did

8    and he lied to them every day that he came into the office.  He

9    gave advice, what accounts needed to be audited, what do we

10   need to be looking for to make sure our system is correct.

11       He was lying to them every single day that he did his

12   job.  And what is the bank still doing?  He's still receiving

13   his pension.  As the government pointed out in its sentencing

14   memorandum, he's using his pension to pay the government back.

15   This isn't money out of his own pocket.  This is money that

16   he's getting because the bank is a good employer.  They treated

17   him well, year after year, and this is what he's done.

18       He paid that money back right out of the money from

19   the bank.  The bank is paying itself basically.  They are

20   giving him his pension for the rest of his life or his wife's,

21   they will get more than $50,000 tax free a year.  And he stole

22   from them.

23       So, Your Honor, the government would say that he

24   needs to be sentenced to the high end of the guidelines for his

25   conduct.  This was not a one time thing.  This was a planned

19

activity.  He cheated, he lied and he stole from them.  I would

ask that you sentence him to high end of the guidelines.

Thank you.

THE COURT:  All right.

Is there anything else you wish to say before I hear

from Mr. Gutierrez?

MR. PARK:  Your Honor, the government indicated that

he did not confess.  Your Honor, I submit that's just not true.

He did, in fact, confess.

Now, initially when he was approached by the bank,

Your Honor, he admits that he may have denied any wrongdoing.

However, before he even contacted the government, he did

confess to it to the bank and he, before we had any contact

with the government, he handed over to the bank, upon their

request, his personal bank statements so they can carry on with

their investigation in that regard.

With regard to the government's argument that the

civil aspect of this case has nothing to do with this case.

Your Honor, I would submit that it does in the sense

that with regard to his cooperation and his level of

cooperation was such that he assisted the bank by, for example,

handing over his personal bank accounts and promptly working

out a deal with them for restitution above and beyond the

principal amount.

And that, Your Honor, even though that deals with the

20

1    civil case, I do believe that it say a lot about his level of

2    cooperation at all levels.

3         The government's position that the pension was not

4    his money.  Your Honor, he's been with IDB for a very long time

5    and that pension he was entitled to.  The government

6    characterizes it as IDB's money.  I would say that that's not

7    correct.  That, in fact, he is entitled to this money and the

8    reason why the bank handed it over to him, as Ms. Menzer

9    indicated, was because they had to under law.  It's not

10   something that we demanded.  According to IDB's counsel, it is

11   just something they could not take without Mr. Gutierrez

12   authorizing it.  And when we worked out the agreement, that's

13   precisely what we did was he cooperated at all levels to work

14   that out.

15        That's all I have.  Thank you, Your Honor

16        THE COURT:  All right.

17        Mr. Gutierrez, I'd like to hear from you.

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  Is there anything that you wish to say to

20   the court?  Anything you think I should take into consideration

21   in passing sentence on you?

22        THE DEFENDANT:  No, sir, I think my lawyer has done

23   so.

24        THE COURT:  Well, I have some questions for you.

25        THE DEFENDANT:  Yes, sir.

21

THE COURT:  Looking at the report, hearing about you,
it's a very interesting story.  The way you started off at the
bank and how you rose in the bank to the position that you
found yourself in just before the discovery of this crime.
It's a remarkable story I think that you were able to do this.

I recall, I think, at the time I took your plea, we
briefly discussed that because you had so many benefits from
your employment there.  What I can't understand is why you did
this.  I find it hard to believe that this was a mistake.  In
fact, if it was a mistake, you wouldn't be here today, I
suppose.  But did you do this?

THE DEFENDANT:  Your Honor, I'm not sure I have an
answer to that.

THE COURT:  Well, you must.  You are a very bright
man.  You know what you were doing.  You were high up in the
bank.  They put a lot of trust in you.  Why did you do this?
What did you do with the money?

THE DEFENDANT:  The money was just deposited in the
account and it was just spent on various day-to-day things.

THE COURT:  You were making good money, I guess, in
your position at the bank.

THE DEFENDANT:  Yes, I was.

THE COURT:  I think, and correct me if I'm wrong,
that at the time I accepted your plea, there were other
benefits that you were receiving that appeared to be very good

22

as well.  But I've never heard you say why you did this.  Some

people, they do it because of heavy drinking or other problems.

Some people, they're gamblers, whatever.  But with the family

that you have, two children, what did you do with the money and

why did you do it?

THE DEFENDANT:  Your Honor, honestly, I really don't

have an answer.  I've been over this many times every since

this happened.  I wish I could say it was greed, but it was no

greed.  There was no need for it.  Financially like you said, I

was very financially comfortable, both my income as well as my

wife.  We were not in financial debt whatsoever.  We were not

living in above our means.

Thoughtful as you are, sir, I wish I could have an

answer for you, but I haven't had an answer for my wife or my

children.  So far I don't have an answer for you, sir.  I have

no idea why this had occurred.

THE COURT:  Let me ask you.  What did you do with the

money?

THE DEFENDANT:  The money was just spent throughout

in day-to-day things, just part of all the regular bills,

mortgage, cars, whatever.  There was no specific item for that

money.

THE COURT:  This went on for a period of 10 years as

I understand it.  It wasn't something done within a very short

time as we have often see in cases like this where people get

23

into financial difficulty and do something like this.  You did

this over a 10-year period.  And you can't tell me why you did

it?

THE DEFENDANT:  All I am assuming, Your Honor, it

seemed that the more I think about this, I've thought of this

and discussed it with my family and my wife, there was

something that it just became the norm, I guess, the money

coming in throughout this period.  It was sort of almost

automatically there.  It was bundled up with all the other

incomes that we had so it was spent as well as the other

income.

THE COURT:  Did you ever give consideration to the

possible consequences in the event you were caught?

THE DEFENDANT:  No, sir.  At the time, no, no, none

whatsoever.

THE COURT:  All right.  Does counsel have anything

else?

MR. PARK:  No, Your Honor.

MS. MENZER:  No, Your Honor.

THE COURT:  All right.  Mr. Park, if you will stand

with the defendant.

Under the total offense level, the guideline

provision in this case is 41 to 51 months to be followed by

supervised release of two to three years, the possibility of a

fine, restitution, and of course, you must make a payment, a

24

1   special assessment payment.

2       I had come to court hoping that I would get some kind

3   of an answer from you as to why this was done.  I have to be

4   honest with you, I think someone as bright as you, with the

5   family you have and so forth, I think you know why it was done

6   and for whatever reason you don't want to say it.

7       The court is going to sentence you as follows, and

8   before I do sentence you, let me just say that the court is not

9   absolutely bound by the guidelines, but the court begins with

10  the guidelines first in looking at the offense and I note and

11  include in this case that the guideline provisions are

12  reasonable.  As to whether your sentence at the lower end or

13  the higher end of the guidelines, that's a difference of about

14  ten months.

15      The court has concluded in this case to sentence you

16  to serve 41 months in prison to be followed by three years of

17  supervised release.

18      I will not impose a fine in this case because you

19  have made restitution and you've also made other payments to

20  the bank.  And I will require you to pay a special assessment

21  of $100 and I hope that can be paid today.

22      MR. PARK:  Yes, sir.

23      THE COURT:  Now, the conditions of your supervised

24  release, Mr. Gutierrez, will be as follows.

25      That you must follow all the conditions set forth in

25

1   the standard conditions of supervised release that will be

2   given to you by the probation office.  And when you are

3   released from prison, you must, within 72 hours, advise the

4   probation office that you have been released so they can have

5   you back on their docket with respect to supervised release.

6          You may not have in your possession, at any time, any

7   gun or dangerous weapon.  You may not have in your possession

8   at any time any illegal drugs or dangerous drugs.

9          There will he a DNA sample requirement because this

10  is a felony offense which means that you shall submit to the

11  collection and use of DNA identification information.

12         You must provide to the probation office during the

13  period of your supervised release, your income tax returns,

14  authorization for release of credit information, and any other

15  business or financial information in which you have a control

16  or interest.

17         You are prohibited from incurring any new credit

18  charges or opening additional lines of credit or negotiating or

19  consummating any financial contracts without the approval of

20  the probation office.

21         There is no indication of drug use in this case, but

22  I will ask the probation office to make arrangements for an

23  evaluation of your use of alcohol to see whether that is a

24  problem and I'll leave that in the hands of the probation

25  office.

26

With respect to your request made through your counsel that you be placed in a facility close to the District of Columbia, I have no problem with that and I will make a recommendation that you be placed at Cumberland, but I must stress to you that that decision is not mine.  That's the decision of the Bureau of Prisons.  I can only make the recommendation.

I don't know what your status is in this country and whether the government will seek to deport you.  I haven't looked into the law on that issue.  I would just reflect that this, based upon what I know, does not appear to be a case in which I would urge that you be deported.

I take a more lenient view of that in this particular case because of the time you've lived here and your family and your ties to the community.  So I can't stop the government from deporting you, but I think since you have made an effort and you will be making an effort to make complete restitution, I would suggest to them that you not be deported.

Another part of your condition that you must observe is to make full and complete restitution.  Now, it's my understanding you have a check, but restitution in this case is in the number $423,283.  $423,283.  That must be paid.  Once the check that you've made to the bank has been paid and it is satisfied, then that obligation would be satisfied, of course.  But it depends upon whether or not that is satisfied.  I am

27

assuming at this point that that will be taken care of and it
is my understand the check has already been made out.

       MR. PARK:  And in the bank's possession.

       THE COURT:  What's that?

       MR. PARK:  And in the bank's possession.

       THE COURT:  In the bank's possession.

       Probation officer.

       THE PROBATION OFFICER:  I was just trying to seek
clarification.  Will he be making that payment to the clerk's
office or directly to the bank?

       THE COURT:  He's made it to the bank, I think.

       MR. PARK:  That's correct.

       THE COURT:  But I would like to have, since the bank
has representatives here, I want my probation officer, our
probation officer, to be fully advised when the bank receives
the money so that we know that that obligation has been
satisfied.

       Does the probation officer have any other requests?

       THE PROBATION OFFICER:  No, Your Honor,

       THE COURT:  Does the government have any further
requests?

       MS. MENZER:  No, Your Honor,

       THE COURT:  As to whether or not you may report,
voluntarily report to Cumberland or wherever you're going to be
incarcerated, I will grant that request.

28

1          Any other questions?

2          MR. PARK:  No, Your Honor.

3          THE COURT:  Mr. Gutierrez, this case still remains a

4    mystery to me.  I still have a feeling that you're not telling

5    me something in this case.  And whether or not you're deported

6    or not as I say, that's up to the immigration authorities.

7    That's in their hands, not the courts.

8          That will be the judgment of the court.

9          Let me advise you can take an appeal from the

10    judgment of the court.  Any appeal must be made within 10 days

11    of the date that I sign the judgment order.  I expect that

12    judgment order will be signed within the next day or two.

13          I would think that if you're going to take an appeal,

14    that you should do that within 10 days of this date.  Your

15    counsel can do that for you.  But in the event your counsel is

16    not able to file a notice of appeal for you, then if you

17    advised the court within that 10 days, I will see to it that

18    your notice of appeal is filed.

19          Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.  That would be the judgment of

22    the court.

23          MR. PARK:  Thank you, Your Honor.

24      (Proceedings concluded at 11:25 a.m.)

25

29

1                   CERTIFICATE OF REPORTER

2        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

3   FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4

5

6   WILLIAM D. MCALLISTER
    COURT REPORTER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25